**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 17a0565n.06

Case No. 17-5248

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| M.D., by and through her next friends and parents, Brent Deweese and Janna Deweese, | ) ) ) | |
| Plaintiff-Appellant, | ) ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF KENTUCKY |
| v. | ) ) ) | |
| BOWLING GREEN INDEPENDENT SCHOOL DISTRICT, | ) ) ) | |
| Defendant-Appellee. | ) ) | |

FILED
Oct 06, 2017
DEBORAH S. HUNT, Clerk

BEFORE: SUTTON, DONALD, and THAPAR, Circuit Judges.

THAPAR, Circuit Judge. There can be no doubt: M.D. is a serious cheerleader who does well at her sport. Sadly, this suit is about a dark incident that marked her otherwise-bright career. A few years ago, a teammate on M.D.'s high-school cheerleading squad sexually assaulted her as they traveled home from a competition. After M.D. reported the assault, her school suspended her attacker and sent him to an alternative school for the remainder of the semester. She now claims that the school's response was inadequate under Title IX.

I.

On the long drive home from the national cheerleading championships, M.D. just wanted to get some sleep. So she curled up near the back of the team's charter bus and dozed off. But she woke, in horror, with R.M. groping her. She was shocked, both by the perpetrator and the

Case No. 17-5248
*M.D. v. Bowling Green Indep. Sch. Dist.*

act. R.M. was a trusted teammate, who—until that very moment—had been like a brother to her. But now he had one hand down M.D.'s shorts, squeezing her buttocks, and the other inside the back of her bra. M.D. immediately pushed R.M. away and returned to her seat. When the team arrived home, she told a friend, who reported the incident to the coaches.

Bowling Green High School's principal interviewed R.M. the next day. R.M. wrote out a confession right away. R.M. was not exactly a hardened criminal: His cheerleading coach described him as "[t]otally normal," without a single prior disciplinary incident. Nevertheless, given the seriousness of R.M.'s offense, Bowling Green School District's superintendent decided to remove him from the high school. The superintendent sent R.M. to an alternative school—effective immediately.

At the alternative school, R.M. had no further disciplinary incidents. The Alternative Placement Committee twice recommended that he return to Bowling Green High School. And in the usual case, the Committee would get its way—Bowling Green's administrators had not overruled a Committee recommendation in more than a decade. But here, the superintendent believed the circumstances called for a longer suspension. So he rejected both recommendations. Only after a third Committee recommendation did the superintendent relent. He decided that R.M. should return to Bowling Green High School, and would thus complete his senior year there at the same time M.D. was a freshman.

That is not to say that R.M.'s transgression was forgotten. Far from it. His return to the high school came with a condition: He was not to have *any* contact with M.D. The school principal personally imparted to R.M. that even one interaction with M.D. would land him back in alternative school for good. The principal then told his assistant principals and R.M.'s guidance counselor to monitor his compliance. Administrators also reviewed the students'

Case No. 17-5248
*M.D. v. Bowling Green Indep. Sch. Dist.*

schedules to make sure they did not share any classes. Later, when it came to administrators' attention that R.M. and M.D. shared the same lunch period, they instructed R.M. to eat his lunch in a designated classroom instead of the cafeteria. And when administrators learned that R.M. had been assigned to take yearbook photos at sporting events, they had him reassigned so that M.D. would not have to see him while cheerleading.

Unfortunately, the administrators did not manage to prevent every encounter between R.M. and M.D. The summer before he returned to Bowling Green High School, R.M. tried to follow M.D. on Instagram. She blocked him, and that was the end of their cyber contact. Back at school, M.D. saw R.M. each day as he picked up his food in the cafeteria and when the two crossed paths en route to their sixth-period classes. M.D. also saw R.M. after he graduated during homecoming weekend. Those sightings made M.D. uncomfortable and caused her considerable anxiety. Nevertheless, M.D. testified that after the assault, she and R.M. never had a single on-campus interaction. Not a wave, not a comment, not so much as a meaningful glance.

M.D.'s father repeatedly voiced concerns about R.M.'s return to campus. He claimed that R.M.'s presence victimized his daughter and created a hostile environment, that her grades were suffering, that her cheerleading coaches were treating her unfairly in retaliation for reporting the assault, and that the School District had failed to promptly provide M.D. with counseling. Eventually, he and M.D.'s mother brought this suit on M.D.'s behalf, claiming that the School District violated M.D.'s rights under Title IX. The district court granted summary judgment for the School District, and M.D. now appeals. We review the grant of summary judgment de novo. *Patterson v. Hudson Area Schs.*, 551 F.3d 438, 444 (6th Cir. 2009).

Case No. 17-5248
*M.D. v. Bowling Green Indep. Sch. Dist.*

## II.

Title IX prohibits sex discrimination in education programs that receive federal financial assistance. 20 U.S.C. § 1681(a). Those educational programs can be held liable for student-on-student sexual harassment under Title IX when a student can demonstrate: (1) she suffered harassment so severe as to "deprive [her] of access to . . . educational opportunities," (2) the institution had actual knowledge of that harassment, and (3) the institution was "deliberately indifferent" to the harassment. *Davis v. Monroe Cty. Bd. of Educ.*, 526 U.S. 629, 650 (1999).

Here, M.D. cannot show deliberate indifference. M.D. claims that the School District was deliberately indifferent to the "environment of sexual harassment" and "ongoing trauma" she endured after R.M. returned to school. To be deliberately indifferent, however, a school district's response to a sexual assault must be "clearly unreasonable in light of the known circumstances." *Davis*, 526 U.S. at 648. M.D. has failed to make this showing. Upon learning of the incident, the school took immediate action. Administrators obtained a confession, suspended R.M., and transferred him to an alternative school. The alternative school twice recommended he return, but the School District said no. Eventually, administrators allowed R.M. to return to the school for his senior year, but only with strict conditions. R.M. was to have no contact with M.D. Those conditions worked as intended: M.D. admits that she and R.M. did not have a single on-campus interaction after the incident.

Given these facts, we cannot say that the School District was deliberately indifferent to M.D.'s situation. We understand, of course, that M.D. would have preferred not to see R.M. at school. She had good reason to feel that way. Yet, as the Supreme Court has instructed, courts must "refrain from second-guessing the disciplinary decisions made by school administrators," who are *not* required to "engage in particular disciplinary action" in response to reported

- 4 -

Case 1:15-cv-00014-GNS-HBB Document 43 Filed 10/06/17 Page 5 of 8 PageID #: 1051
Case: 17-5248 Document: 25-1 Filed: 10/06/2017 Page: 5 (5 of 8)

Case No. 17-5248
*M.D. v. Bowling Green Indep. Sch. Dist.*

harassment. *Davis*, 526 U.S. at 648 (rejecting argument that "nothing short of expulsion of every student accused of misconduct . . . would protect school systems from liability"). And while we wish we lived in a world where schools could prevent the kind of discomfort M.D. suffered, we do not. Often, school administrators face the unenviable task of balancing victims' understandable anxiety with their attackers' rehabilitation. They have to make judgment calls about how best to balance those competing interests with the limited resources they have. Here, the administrators formulated a remedial policy that was successful not only in preventing R.M. from harassing M.D. after he returned to campus but in preventing any interaction whatsoever. Under the circumstances, that response was not clearly unreasonable. *See Stiles ex rel. D.S. v. Grainger Cty.*, 819 F.3d 834, 849–51 (6th Cir. 2016) (no deliberate indifference where administrators gave verbal warnings to harassers, temporarily suspended them, and revised victim's class schedule, but were unsuccessful in halting harassment over a one-and-a-half-year period); *Pahssen v. Merrill Cmty. Sch. Dist.*, 668 F.3d 356, 365 (6th Cir. 2012) (no deliberate indifference where, in response to initial reports of sexual misconduct, administrators monitored attacker for thirty days—even though he committed another assault after monitoring ended); *see also Gordon v. Traverse City Area Pub. Schs.*, 686 F. App'x 315, 324–25 (6th Cir. 2017) (no deliberate indifference where school responses to ongoing harassment ranged from temporary suspension to verbal reprimands).

M.D. argues that her case is analogous to *Patterson* and *Vance*, where school districts had actual knowledge that their efforts to remediate *ongoing* harassment were ineffective. *See Patterson*, 551 F.3d at 448 (summary judgment inappropriate where student was continually harassed over a number of years, to which school district responded with repeated verbal reprimands, knowing the reprimands were not stopping the harassment); *Vance v. Spencer Cty.*

Case No. 17-5248
*M.D. v. Bowling Green Indep. Sch. Dist.*

*Pub. Sch. Dist.*, 231 F.3d 253, 262 (6th Cir. 2000) (same). But unlike those cases, the sexual misconduct here was not ongoing. After the initial assault, M.D. saw R.M. in the hallway and at a handful of school events. Since M.D. does not allege that R.M. harassed her after he returned, the cases she cites are not analogous. To hold otherwise would effectively foreclose remedial measures short of expulsion and undermine the "flexibility" that the *Davis* Court took care to guard. *See Davis*, 526 U.S. at 648–49, 652–53 (stressing that schools need not "purg[e]" all harassment or expel every student accused of misconduct). M.D.'s deliberate indifference claim thus fails as a matter of law.

### III.

M.D. also argues that her cheerleading coaches retaliated against her because she reported the assault. The problem with this claim, however, is that she did not include it in her complaint. Instead, M.D. raised the retaliation claim for the first time in her opposition to the School District's motion for summary judgment. Plaintiffs are not allowed to assert new claims in their summary judgment papers where allegations supporting those claims were not included in the initial complaint. *Tucker v. Union of Needletrades, Indus. & Textile Emps.*, 407 F.3d 784, 787–88 (6th Cir. 2005). Allowing the plaintiff to raise a new claim in response to a summary judgment motion subjects a defendant to "unfair surprise," because the defendant has no opportunity to investigate the claim during discovery. *Id.* at 788. And the court's ability to decide the case is similarly undermined, as the "gravamen of the dispute" had not been "brought frankly into the open for inspection by the court." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512–13 (2002). As such, this claim was not properly before the district court. Fed R. Civ. P. 8(a) ("A pleading that states a claim for relief *must* contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief[.]") (emphasis added).

Case No. 17-5248
*M.D. v. Bowling Green Indep. Sch. Dist.*

Even if M.D.'s retaliation claim had been properly before the district court, the district court was correct that M.D. could not prove that claim. M.D. cites *Doe v. Rutherford County Board of Education*, 86 F. Supp. 3d 831, 842 (M.D. Tenn. 2015), for the proposition that the School District is liable for M.D.'s coach's actions on an agency theory, or—alternatively—that the School District is liable for remaining idle after it learned about the alleged retaliation. To the extent that *Doe* stands for the former proposition, it is incorrect. *Davis* clearly rejected the use of agency principles to impute liability to schools for the misconduct of their teachers. *Davis*, 526 U.S. at 640, 642 (holding that "a recipient of federal funds may be liable in damages under Title IX only for its own misconduct," and rejecting the use of "agency principles to impute liability to the district for the misconduct of its teachers"). As to the latter, M.D. has failed to cite any authority applying the *Davis* deliberate indifference framework to a Title IX retaliation claim. But even were that analysis to apply, the result would be the same. The record shows that after learning about the alleged retaliation, the school principal emphasized to M.D.'s cheerleading coaches that she was to be treated just like any other team member. The School District's response to the alleged retaliation was not "clearly unreasonable in light of the known circumstances." *Davis*, 526 U.S. at 648. The district court was correct to dismiss M.D.'s retaliation claim on summary judgment.

Accordingly, we AFFIRM.

# UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

|  |  |  |
|---|---|---|
| Deborah S. Hunt<br>Clerk | 100 EAST FIFTH STREET, ROOM 540<br>POTTER STEWART U.S. COURTHOUSE<br>CINCINNATI, OHIO 45202-3988 | Tel. (513) 564-7000<br>www.ca6.uscourts.gov |

Filed: October 06, 2017

Mr. Daniel J. Canon
Law Offices
462 S. Fourth Street
Suite 101
Louisville, KY 40202

Mr. Whayne Cravens Priest III
English, Lucas, Priest & Owsley
P.O. Box 770
Bowling Green, KY 42102

    Re: Case No. 17-5248, *M. D. v. Bowling Green Ind. School Dist*
        Originating Case No. : 1:15-cv-00014

Dear Counsel,

   The Court issued the enclosed Order/Opinion today in this case.

                                        Sincerely yours,

                                        s/Robin Baker
                                        Case Manager
                                        Direct Dial No. 513-564-7027

cc:  Ms. Vanessa L. Armstrong
     Ms. Regina A. Jackson

Enclosure

Mandate to issue